Filed 6/16/23  In re I.A. CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re I.A., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>I.D.,<br><br>    Defendant and Appellant. | F085555<br><br>(Super. Ct. No. JVDP-21-000235)<br><br><br>**OPINION** |

### <u>THE COURT</u>[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Poochigian, Acting P. J., Detjen, J. and Smith, J.

Appellant I.D. (father) appealed from the juvenile court's order terminating his parental rights pursuant to Welfare and Institutions Code section 366.26[1] to his then one-year-old son, I.A. After reviewing the juvenile court record, father's court-appointed counsel informed this court she could find no arguable issues to raise on father's behalf. This court granted father leave to personally file a letter setting forth good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844.) Father filed a letter but failed to address the termination findings or orders, or set forth a good cause showing that any arguable issue of reversible error arose from the termination of his parental rights. (*Phoenix H.*, at p. 844.) Consequently, we dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Referral*

In November 2021, father helped G.A. (mother) deliver I.A. in his truck while on the way to the hospital. Afterwards, an ambulance arrived and transported mother and I.A. to the hospital, but father could not go because there was an active protective order preventing him from being near mother. At the hospital, I.A. tested positive for amphetamines and a referral ensued. A social worker from the Stanislaus County Community Services Agency (agency) responded to the hospital and interviewed mother. Mother identified I.D. as I.A.'s father and reported he was unable to go to the hospital due to the protective order. She denied having his contact information or knowing his whereabouts. The nurse informed the social worker that I.A. had been born at 31 weeks and would likely remain hospitalized. In the days that followed, the agency unsuccessfully attempted to locate father.

On November 16, 2021, father contacted the agency, agreed to meet with social workers, and stated his preferred language was Spanish. The next day, two social

---

[1]     All further statutory references are to the Welfare and Institutions Code.

workers met with father. The meeting was conducted in Spanish. He reported he helped deliver I.A. while on the way to the hospital but did not accompany them to the hospital afterwards due to the protective order.

On November 19, 2021, social workers met with father to provide him with a copy of the protective custody warrant and other information, including the date and time of the detention hearing. Father asked about obtaining a DNA test because he was unsure if he was I.A.'s father. That same day, I.A. was placed in protective custody. A few days later, a social worker contacted father and informed him the time of the detention hearing had changed. Father stated he might not be able to attend because he had just started working, but would try to attend.

### Petition and Detention

On November 23, 2021, the agency filed a petition on behalf of I.A. pursuant to section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling), alleging mother and father had unresolved substance abuse and domestic violence issues, and mother was suffering from mental health problems. Additionally, the petition alleged I.A.'s half sibling was found to be abused or neglected in other dependency proceedings and mother's reunification services had been terminated. The petition identified father as I.A.'s alleged father.

On November 24, 2021, the juvenile court held a detention hearing. Mother and father did not appear, but were both appointed counsel. County counsel acknowledged father had requested DNA testing. She said, "If at any time the father does want that, we can also put a motion on to order that or the [c]ourt could defer and order that DNA testing occur upon father's request. We can do that since it looks like he does want to establish paternity because he is unsure of the biological connection." The court agreed. The court found prima facie evidence supported the allegations, ordered I.A. detained, deferred ordering DNA testing until father was present in court or counsel had an opportunity to speak with him, and set a combined jurisdiction and disposition hearing.

3.

*Jurisdiction and Disposition Hearing*

In its jurisdiction and disposition report, the agency recommended the allegations in the petition be found true, I.A. be adjudged a dependent of the court, mother and father be denied reunification services, and a section 366.26 hearing be set. The department recommended father not be given reunification services specifically because he was an alleged father. I.A. was now two months old and had been placed in a resource family approval home with his half sibling. Mother's whereabouts were unknown. Neither mother nor father had scheduled visits or engaged in services. The agency recommended the juvenile court find visits with mother and father would not be detrimental and order visits continue.

On December 29, 2021, the juvenile court held a combined jurisdiction and disposition hearing but trailed the matter due to the social worker's unavailability. Father arrived after the hearing had concluded. He was provided with a copy of the minute order and contact information for his counsel.

On January 19, 2022, the juvenile court held the continued hearing. Mother and father were not present. Father's counsel informed the court he had been unable to speak with father. The court found the allegations in the petition true. The court then addressed the agency's recommendation to find that visits would not be detrimental. The following colloquy ensued:

> "THE COURT: [¶] My other question in regards to visitation, the report indicates not being detrimental and allowing that contact. Given dad's status and the [criminal protective order] and given mom's complete lack of contact, why wouldn't the [c]ourt find it detrimental to have visits?
>
> "[COUNTY COUNSEL]: Well, Your Honor, as to the father, he's an alleged father; so he wouldn't be entitled to visitation. [¶] As to the mother, we have these cases where, you know, she might come up and she could be appropriate. I think it is kind of a wobbler in that regard. [¶] I'll submit the issue to the [c]ourt."

4.

The court found visits with mother and father would be detrimental, adjudged I.A. a dependent of the court, denied mother and father reunification services, struck the agency's recommendation that visits should continue, and set a section 366.26 hearing.

***Initial Section 366.26 Hearing***

In its section 366.26 report, the agency recommended parental rights be terminated with a permanent plan of adoption. I.A. was still in the same resource family approval home and his caregivers wished to adopt him. Mother had been located. She was living in Mexico and visiting I.A. via video conference. Father had not requested visits. The social worker reported she had not had contact with father, and he had not asked about I.A. since his birth. His whereabouts were unknown at that time.

On May 17, 2022, the court held a section 366.26 hearing where father made his first appearance. The court continued the matter to September 2022 so that mother could be provided with adequate notice. Father's counsel informed the court father had not received a copy of the reports and requested the agency provide father with a copy of all reports in Spanish at his new address. The court ordered the agency to make all efforts to provide father with a copy of "the report" in Spanish, or have someone review the entire report in a language he understood.

On June 2, 2022, a social worker met with father and provided him with copies of all reports the agency had filed and reviewed them with him in Spanish. Father asked what he could do to obtain reunification services and the social worker advised him to contact his counsel for legal advice.

***Father's Section 388 Request to Change Court Order***

On July 7, 2022, father filed a "REQUEST TO CHANGE COURT ORDER" (JV-180), requesting the juvenile court change the order denying him reunification services. He stated that since the order was made, he had been accepted into a residential treatment program and had begun engaging in services on his own. He attached various documents from his domestic violence treatment provider showing proof of enrollment in

5.

March 2022, and a letter from his residential treatment provider confirming his acceptance into the program in April 2022. He requested the court order a DNA test. If he was found to be I.A.'s biological father, he requested to be elevated to presumed father status and ordered reunification services. He believed his request was in I.A.'s best interest because he wanted to be in his life. He did not want I.A. to grow up thinking he did not have a father or that he did not want to reunite with him.

On July 29, 2022, the juvenile court held a hearing to determine if it would grant or deny an evidentiary hearing on father's section 388 petition. The court denied the requests for an evidentiary hearing and DNA testing, stating father had counsel for eight months, knew of the proceedings, and had not requested testing or visited I.A.

***Continued Section 366.26 Hearings and Father's DNA Testing***

In its second section 366.26 report, the agency again recommended parental rights be terminated with a permanent plan of adoption. Mother was back in California and was residing in an outreach program, but had not visited I.A. since returning. The report stated father had not been granted visits due to his alleged father status. I.A.'s caregivers still wished to adopt him.

On September 20, 2022, the juvenile court held the continued section 366.26 hearing. Both mother and father were present. Mother requested a contested hearing, which the court granted. Additionally, the court revisited father's request for DNA testing and set a hearing to address the issue.

On October 11, 2022, the juvenile court ordered DNA testing for father, which he subsequently participated in.

On November 30, 2022, the juvenile court held a section 366.26 hearing but trailed the hearing as the DNA test results had not been received.

On January 3, 2023, the juvenile court held the contested section 366.26 hearing. Only father appeared. The DNA results indicated he was I.A.'s biological father and his status was elevated to biological father. Father's counsel informed the court father

6.

wanted to testify, but understood he did not have a right to present evidence due to his status. The court stated, "I understand he may not have a right to it, but I will hear his testimony if you wish to put him on the stand."

Father testified he met I.A. when he was born as he "helped … take him out of his mother's womb" in his truck. However, he did not go to the hospital because of the protective order. The police officer told him he would be arrested if he went. He had not seen I.A. since birth because "[he hadn't] had the opportunity," but was asking the court to give him that chance now. On cross-examination, he testified he was incarcerated in April 2022 for one month and his first appearance in juvenile court was in May 2022, but did have contact with social workers prior to that.

County counsel argued the juvenile court should terminate parental rights, choose adoption as the permanent plan, and find the parental-benefit exception inapplicable. Father's counsel argued against adoption as father wanted to be involved in I.A.'s life. He said, "There is the option of guardianship, where the father can still get discretionary services [or] visitation. So[,] he is asking for visits. I can't really make a good faith argument of consistent visitation, but I do want the [c]ourt to know that he is here, wanting to be involved in the minor's life, however that may be." He said father acknowledged he had not participated in the beginning of the case and took responsibility for it.

The court found I.A. was likely to be adopted and terminated parental rights. In finding the parental-benefit exception inapplicable, the court stated as follows:

> "I do find that there is clear and convincing evidence that this child is very likely to be adopted. The current caregiver certainly is desirous of that; has provided a stable and loving home for the child since he was removed.

> "Once I find that it is very likely that the child will be adopted, then I … must use adoption as the permanent plan unless a legal exception applies. And, of course, the [c]ourt will follow *In re Caden C.*, which is at

7.

11 Cal.5th 614, and the following cases in regard to the test for that parental bond exception.

"The first element being regular visitation and contact. In this case, there is very little to none. Basically [father] was present for the birth of his child which occurred outside of the hospital. The mother and child then, of course, were whisked away to the hospital, and he was precluded from visiting due to the criminal protective order that was in place.

"However, he was out of custody at that time. He was properly noticed—both parents were properly noticed of the detention hearing on November 24th of 2021. They did not appear; however, counsel was appointed.

"Then at the jurisdiction/disposition [hearing] on January 19th of 2022, again, notice was proper. Notice was sent out on January 10th of 2022, and neither parent appeared.

"[Father] remained out of custody, as did, of course, the mother, until April of 2022, when [father] indicates he was incarcerated, but for approximately one month. During that interim period of time, there was no contact, no regular visitation. [Father] did appear in May [2022], when he had been accepted to the Victory Outreach program and has remained in that program. And as [father's counsel] argued, has appeared at each hearing since then with his case manager from Victory Outreach. And other than that, there has been no contact.

"So the next prong then, if there is not regular visitation and contact, is the relationship between the parent and the child, the continuation of which would be of benefit to the child, such that a substantial, positive, emotional attachment has been made that would benefit the child, and withdrawal of that relationship would be of detriment to the child.

"In this case, unfortunately, as [minor's counsel] and other counsel pointed out, the child does not know his parents. There is not a relationship. There has not been regular visitation and contact. Has certainly not been substantial progress in terms of addressing any services. However, that is not the issue at a [section 366].26 hearing. The focus is on the child, and the stability and permanency for that child.

"I do not find sufficient evidence. And the burden is on the parent, of course, to prove that the exception exists by a preponderance of the evidence. I do not find that there is evidence by a preponderance that

termination of the parental relationship, termination of rights would be of detriment to the child in this case."

On January 9, 2023, father filed a notice of appeal.

## **DISCUSSION**

"If the court cannot safely return a dependent child to a parent's custody within statutory time limits, the court must set a hearing under section 366.26." (*In re Caden C.* (2021) 11 Cal.5th 614, 630.) "[T]he goal at the section 366.26 hearing is 'specifically … to select and implement a permanent plan for the child.' " (*Ibid.*) "At [the] hearing, the court may order one of three alternatives: adoption, guardianship or long-term foster care." (*In re S.B.* (2008) 164 Cal.App.4th 289, 296.) "According to [the] procedure [under section 366.26], the court must first determine by clear and convincing evidence whether the child is likely to be adopted. [Citation.] If so, and if the court finds that there has been a previous determination that reunification services be terminated, then the court shall terminate parental rights to allow for adoption. [Citation.] But if the parent shows that termination would be detrimental to the child for at least one specifically enumerated reason, the court should decline to terminate parental rights and select another permanent plan." (*Caden C.*, at pp. 630–631.) One exception to adoption is the parental-benefit exception, which requires the parent to establish, by a preponderance of the evidence, "that the parent has regularly visited with the child, that the child would benefit from continuing the relationship, and that terminating the relationship would be detrimental to the child." (*Id.* at p. 629; § 366.26, subd. (c)(1)(B)(i).)

In the present case, father does not argue the juvenile court erred in finding I.A. was likely to be adopted, or in finding the parental-benefit exception did not apply. Neither does he argue that another exception to adoption should have been applied. Rather, he expresses he took a DNA test and knows he is the father of I.A. and he has "changed [his] life around and [is] here to be able to have that opportunity to get [his] son back and have him in [his] life again." He states he began trying to obtain custody of I.A.

9.

since he was three months old, but had not been allowed to participate in visits until he had a DNA test done. By the time he obtained DNA results, I.A. was one year old. He did not sign the birth certificate because he could not go to the hospital due to the protective order.

Father was considered an alleged father up until the section 366.26 hearing, where his status was elevated to biological father. Alleged fathers are not entitled to custody, reunification services, or visitation. (*In re Daniel F.* (2021) 64 Cal.App.5th 701, 712.) "Due process for an alleged father requires only that the alleged father be given notice and 'an opportunity to appear and assert a position and attempt to change his paternity status. [Citations.]' " (*In re Paul H.* (2003) 111 Cal. App. 4th 753, 760.) While alleged fathers are not entitled to appointed counsel either (*ibid.*), father was appointed counsel at the detention hearing. Father received notice of the detention hearing and the jurisdiction and disposition hearing, but did not appear. Father's first appearance was at the initial section 366.26 hearing in May 2022. Father did not request DNA testing in court until July 2022—approximately eight months after proceedings had begun, despite having appointed counsel for those entire eight months. While the court initially denied father's request for DNA testing, the court later ordered testing and declined to proceed with the section 366.26 hearing until results were available. At the final section 366.26 hearing, the court allowed father to elevate his status to biological father and allowed him to present evidence before ruling on the termination of parental rights.

We reiterate, father does not address how the termination findings or orders were erroneous. An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.) On this record, we conclude father failed to make a good cause showing that an arguable issue of reversible error exists. Further, although we are not

10.

required to do so, we have reviewed the record as it relates to the section 366.26 hearing and have found no arguable issues.  Accordingly, we dismiss the appeal.

## **DISPOSITION**

This appeal is dismissed.